IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DAVID WAYNE SHOCK                                                                      PLAINTIFF

v.                                        No. 4:14–CV–683-DPM–BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                        DEFENDANT

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was prepared for U.S. District Judge D.P. Marshall Jr.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Marshall may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

David Wayne Shock seeks judicial review of the denial of his application for social security disability benefits.[3] Mr. Shock last worked in October 2011, when he was 44 years old. He claims he is disabled because of back pain, scoliosis, heart problems, bipolar disorder, depression, and right-eye blindness.[4]

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ identified blindness in one eye as a severe impairment,[5] but determined that Mr. Shock could do work permitting a reduced field of vision and affected peripheral vision in one eye.[6] Because a vocational expert testified that a person with Mr. Shock's ability to work could perform his past work,[7] the ALJ concluded that Mr. Shock was not disabled and denied the application.[8]

After the Commissioner's Appeals Council denied a request for review,[9] the

---

[3]SSA record at pp. 131 & 137 (applying on May 16, 2012 and alleging disability beginning Jan. 6, 1996).

[4]*Id*. at p. 178.

[5]*Id*. at p. 16.

[6]*Id*. at p. 17.

[7]*Id*. at pp. 63-68.

[8]*Id*. at p. 19.

[9]*Id*. at p. 1.

ALJ's decision became a final decision for judicial review.[10] Mr. Shock filed this case to challenge the ALJ's decision.[11] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12] This recommendation explains why substantial evidence supports the decision and why the ALJ made no harmful legal error.

**Mr. Shock's allegations**. Mr. Shock challenges the determination that he could work within the limitations the ALJ identified. He says the ALJ omitted many of his symptoms, including functional illiteracy. He maintains that the ALJ failed to fully and fairly develop the record, because the record omits some of his primary care physician's (PCP) treatment records. According to Mr. Shock, the ALJ should have asked the PCP for remote treatment records. He argues that the ALJ improperly discredited the PCP's opinion about his ability to work. He maintains that the ALJ failed to consider evidence

---

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[11]Docket entry # 1.

[12]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

that detracts from the decision. He complains about the evaluation of his credibility; he says the ALJ identified no inconsistency that would justify discounting his credibility. For these reasons, he argues, substantial evidence does not support the ALJ's decision.[13]

**Applicable legal principles**. Substantial evidence exists if a reasonable mind would accept the evidence as adequate to support the decision.[14] In reviewing for substantial evidence, the court must consider the record as a whole.[15] Reviewing for substantial evidence requires more than searching for the existence of substantial evidence.[16] The court must consider all of the evidence — including evidence detracting from the decision[17] — but the court may not reverse simply because substantial evidence supports an opposite conclusion.[18] Substantial evidence exists in this case for the following reasons:

---

[13]Docket entry # 9.

[14]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[15]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[16]*Scott o/b/o A.S. v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008); *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989).

[17]*Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004).

[18]*Slusser*, 557 F.3d at 925; *Sultan*, 368 F.3d at 863.

1. **Mr. Shock over-stated his allegations**. "The ALJ may discredit a claimant based on inconsistencies in the evidence."[19] Mr. Shock alleged disability beginning January 6, 1996, at age 28.[20] That date also served as the onset date for an earlier application.[21] Since then, Mr. Shock had a good work history. He worked at a substantial gainful activity level[22] until October 2, 2011.[23] This effort is probative of Mr. Shock's claim, because a person who engages in substantial gainful activity is not entitled to disability benefits.[24] Claiming to be disabled when engaged in substantial gainful activity is an inconsistency that undermines Mr. Shock's credibility. Mr. Shock says the ALJ identified no inconsistency, but the ALJ cited Mr. Shock's daily activities, his reason for no longer working, and the lack of medical treatment.[25]

---

[19]*Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).

[20]SSA record at pp. 131 & 137.

[21]*Id*. at pp. 144 & 155 (showing prior applications alleging disability beginning Aug. 9, 1967 (at birth) and Jan. 6, 1996 (age 28) & *id*. at p. 188 (claim denied on Mar. 28, 1996).

[22]20 C.F.R. §§ 404.1572 & 416.972 ("Substantial gainful activity is work activity that is both substantial and gainful: (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.").

[23]SSA record at pp. 145 & 164. The unfavorable decision erroneously states that Mr. Shock had not engaged in substantial gainful activity since his alleged onset date of January 6, 1996. *Id*. at p. 16. The error has no bearing on the result in this case.

[24]20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4) ("At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.").

[25]SSA record at pp. 17-18.

2. **Mr. Shock stopped working for reasons unrelated to his claim**.  Mr. Shock last worked for Virco Manufacturing Corporation in Conway.  He worked for Virco, assembling chairs, from October 1996 until October 2, 2011,[26] when he accepted a severance offer.[27]  He accepted the offer in hopes of obtaining a job at Hackney Ladish's plant in his home town of Russellville.[28]  He moved to Russellville, but was not hired.  When his unemployment benefits ceased, he applied for disability benefits.[29]  This sequence shows Mr. Shock stopped working for reasons unrelated to the allegations underlying his claim.

3. **The ALJ accounted for Mr. Shock's impairment**.  Mr. Shock alleged numerous impairments — back pain, scoliosis, heart problems, bipolar disorder, depression, and right-eye blindness[30] — but the medical evidence establishes one impairment: weak vision in the left eye.  According to his optometrist, Mr. Shock has long-standing refractive amblyopia of the left eye.[31]  "Amblyopia is a decrease in vision in a healthy eye that is caused by problems with the eye and the brain failing to work together in correctly processing information from the 'bad' or amblyopic eye."[32]  Lay people refer to amblyopia as "lazy eye," because "the eye with poorer vision does not seem to be doing its job of seeing."[33]

---

[26]*Id*. at pp. 32, 169 & 179.

[27]*Id*. at pp. 33 & 253.

[28]*Id*. at pp. 34-36.

[29]*Compare id*. at p. 149 (showing unemployment payments through second quarter 2012) *with id*. at pp. 131 & 137 (applying for disability in May 2012).

[30]*Id*. at p. 178.

[31]*Id*. at p. 232.

[32] Lorraine Steefel & Tish Davidson, 1 The Gale Encyclopedia of Med. 181 (4th ed.).

[33]*Id*.

Amblyopia usually surfaces during childhood. According to Mr. Shock, he has had the condition since birth.[34] He says the condition reduced his peripheral vision during childhood. Glasses correct his vision to 20/25 vision.[35] A reasonable mind would accept the onset of Mr. Shock's vision problem — since birth — as adequate to support the ALJ's determination because Mr. Shock had amblyopia since birth and did not stop working because of amblyopia.

4. **Medical evidence establishes no other significant impairment**. Mr. Shock alleged numerous impairments, but allegations are not enough to prove medical impairment; a claimant must establish medical impairment with medical evidence.[36] Mr. Shock suggests the record omits medical evidence that might establish impairment, but a claimant who complains

---

[34]SSA record at p. 31 ("Ever since birth as far as I know.") & p. 233 ("since birth left eye weaker and rolls around and away").

[35]*Id*. at p. 343.

[36]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. §§ 404.1508 & 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. §§ 404.1529 & 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

about record development faces a heavy burden.[37] Mr. Shock relies on a PCP medical opinion indicating the PCP treated him for nine years. Because the record includes only 2011 treatment records, Mr. Shock maintains the ALJ failed to develop the record.

Earlier treatment records are not probative of Mr. Shock's claim because he was not eligible for disability benefits until October 2, 2011, when he stopped working at substantial gainful activity. The most probative evidence is evidence generated shortly before October 2011. That evidence is in the record. The 2011 treatment records establish no medical impairment.[38]

During Mr. Shock's last visit to the PCP — two weeks before he left Virco — the PCP found no neurological, motor, or sensory deficits.[39] Heart rate and rhythm was normal; pulses were good. The PCP attributed increased stress and depression to the anticipated job loss, and adjusted Mr. Shock's psychotropic medications. Mr. Shock sought no further treatment until December 2012, when he presented to a new PCP for medication refills.[40] The new PCP noted two negative medical findings — some low back and hip pain, and possible early glucose intolerance.[41] Those findings establish

---

[37]*Combs v. Astrue*, 243 Fed. App'x 200, 205 (8th Cir. 2007) (claimant who says ALJ failed to adequately develop the record bears a heavy burden; the claimant "must show both a failure to develop necessary evidence and unfairness or prejudice from that failure"); *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("Most significantly, reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.").

[38]SSA record at pp. 240-43.

[39]*Id*. at p. 240.

[40]*Id*. at p. 291.

[41]*Id*. at pp. 290-91.

no impairment. According to agency medical experts, Mr. Shock has no severe impairment.[42] A reasonable mind would expect a person with disabling symptoms to seek medical treatment.

5. **The ALJ properly discredited the PCP's medical opinions**. In February 2013, the PCP completed two medical questionnaires addressing Mr. Shock's physical and mental abilities to work and reporting disabling symptoms.[43] Mr. Shock complains about the weight given the opinions, but no basis exists for crediting them. First, the record does not establish the PCP as treating physician.[44] The PCP did not see Mr. Shock after he stopped working; the last time was in September 2011. Without examining him, the PCP lacked a basis for completing the questionnaires. Second, the PCP's 2011 treatment notes do not support his opinion. The PCP documented a few complaints, but no medical findings supporting reported limitations.[45] The opinion warranted no weight.[46]

6. **No medical evidence establishes functional illiteracy**. According to the mental diagnostic examiner, Mr. Shock "may have a limited fund of general information, or may function in the range of borderline intellectual functioning,"[47] but he has an adequate capacity to cope with the mental demands of work.[48] The examiner reported limited math skills,

---

[42]*Id*. at pp. 252 & 283.

[43]*Id*. at pp. 305 & 312.

[44]*See* 20 C.F.R. § 404.1527 (favoring treating-physician opinions, in part, because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)….").

[45]SSA record at pp. 240-43.

[46]*See* 20 C.F.R. § 404.1527 (directing "controlling weight" if treating physician opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence").

[47]SSA record at p. 259.

[48]*Id*. at p. 258.

but reported no deficiencies with reading or writing implicating illiteracy. Mr. Shock now contends that he is functionally illiterate.

To the extent Mr. Shock has problems with reading or writing, the ALJ asked the vocational expert about how functional illiteracy impacts the ability to work.[49] According to the vocational expert, a person who is functionally illiterate can do an unskilled job like Mr. Shock's past jobs. The vocational expert also identified other available jobs.[50] Even if Mr. Shock was functionally illiterate, the ALJ met the Commissioner's burden to show work exists that Mr. Shock can do.

### Conclusion and Recommendation

Medical evidence establishes one impairment — vision problems with the left eye. Vocational evidence shows Mr. Shock can do his past work despite vision problems. A person who can do his past work is not disabled under social security law, regardless of whether such work exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[51]

Substantial evidence supports the ALJ's decision. The ALJ made no harmful legal error. For these reasons, the undersigned magistrate judge recommends DENYING Mr. Shock's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

---

[49]*Id*. at pp. 62-68.

[50]*Id*. at pp. 67-68 (identifying garment entry clerk, store laborer, motel maid cleaner and warehouse inspector checker).

[51]42 U.S.C. § 1382c(a)(3)(B).

Dated this 20th day of July, 2015.

                                                        _____
                                                    UNITED STATES MAGISTRATE JUDGE